**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COOPER IVF GLOBAL CULTURE MEDIA LITIGATION | MDL No. |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS A.B., C.D., F.G., and H.I.'S MOTION TO TRANFER AND CENTRALIZE RELATED ACTIONS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs A.B., C.D., F.G., and H.I. ("Movants")[1] respectfully submit this memorandum of law in support of their Motion to Transfer and Centralize Related Actions for Coordinated or Consolidated Pretrial Proceedings. To date, thirty related cases have been filed in four federal districts concerning injuries arising out of an in vitro fertilization ("IVF") product that Defendants recalled in December 2023. Twenty-nine cases are brought by individuals and one is a class action seeking to represent a nationwide class.

Transfer and centralization of the related actions to the Northern District of California — where the vast majority of the cases are pending — will advance the efficient resolution of this litigation and serve the convenience of the parties and the witnesses. The district has extensive experience with multidistrict litigation, specific experience with complex, multiparty litigation involving alleged damage to human eggs and embryos, and the pending cases are already related in front of an experienced jurist, Judge Jon S. Tigar, who has already presided over critical early case management activities in several of the cases.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are individuals who sought to build their families through the expensive and emotionally taxing process of IVF. Compl. (Dkt. 53) ¶¶ 4, 19–35 (describing the invasive procedures and emotional impact generally involved in IVF).[2] The process takes months (sometimes years) and typically costs between $20,000–$60,000 out of pocket. *Id.* ¶ 26. It requires multiple doctor visits involving blood tests, invasive ultrasound examinations, and anesthetized surgery to retrieve eggs. *Id.* ¶¶ 23–24. Before transferring embryos into a woman, or

---

[1] Plaintiffs A.B. and C.D. are plaintiffs in *A.B. and C.D. v. CooperSurgical, Inc. et al*, No. 4:24-cv-01061-JST (N.D. Cal.), while Plaintiffs F.G. and H.I. are plaintiffs in *F.G. et al v. CooperSurgical, Inc. et al*, No. 4:24-cv-01261-JST (N.D. Cal).

[2] All "¶" references are to paragraphs in the Amended Complaint filed in the *F.G. and H.I.* class action. Case No. 4:24-cv-01261-JST (Dkt. 53).

cryopreserving them for future use, clinicians place IVF-fertilized eggs in a specially created liquid, called culture media, to develop. *Id.* ¶ 32. Culture media is designed to replicate the conditions of a woman's body and support the healthy development of eggs and embryos. *Id.* ¶¶ 2, 40. Relevant here, a key ingredient in culture media and embryonic development is magnesium. *Id.* ¶ 41.[3]

Defendants manufacture, market, and sell culture media to fertility clinics. *Id.* ¶ 2. In December 2023, Defendants recalled certain lots of its culture media products after learning they were magnesium deficient and could harm or destroy embryos. *Id.* ¶¶ 3, 47. Tragically, clinics across the country had already placed patients' eggs and embryos in Defendants' defective culture media. *Id.* ¶¶ 3, 5. The magnesium-starved culture media damaged and destroyed the eggs and embryos.

Since February 2, 2024, at least thirty actions have been filed in or removed to four districts by individuals affected by the recalled culture media lots, including one class action. These include the following:

- Twenty-seven in the Northern District of California. *See* Exhibit A, Schedule of Related Actions;

- One in the Middle District of Florida: *Kathryn Poole v. CooperSurgical, Inc. et al.*, No. 8:24-cv-01002-SDM-AAS (March 18, 2024);

- One in the District of New Mexico: *S.R. et al. v. CooperSurgical, Inc. et al.*, No. 1:24-cv-00631-SCY-KK (removed June 20, 2024);

- One in the District of Oregon: *CLF 007 et al. v. CooperSurgical, Inc., et al.*, No. 6:24-cv-00990-AA (June 21, 2024)

---

[3] Culture Media can also be used to temporarily store unfertilized eggs.

The Related Actions involve overlapping Defendants and allegations. All Plaintiffs allege that The Cooper Companies, Inc., through its subsidiary CooperSurgical, Inc., manufactured, designed, marketed, and sold defective media culture products that harmed Plaintiffs' eggs or embryos. All Plaintiffs allege that they are fertility patients whose eggs or embryos were impacted in an IVF cycle in late 2023 due to contact with culture media that Defendants subsequently recalled. All Plaintiffs allege deficiencies in the manufacture of the recalled lots. And all Plaintiffs assert similar causes of action: strict products liability under manufacturing defect, design defect, and failure to warn theories; negligence; trespass to chattels; and unjust enrichment. The class action complaint, *F.G. and H.I.*, No. 4:24-cv-001261-JST, asserts claims on behalf of a nationwide class of similarly situated individuals.

In the Northern District of California, Judge Jon S. Tigar related twenty-six pending cases. The parties will complete briefing threshold jurisdictional issues on July 12, 2024. A hearing is set for August 29, 2024.

In the Middle District of Florida, *Poole* is currently briefing Defendants' motions to dismiss, with briefing set to conclude in July 2024. No. 8:24-cv-01002-SDM-AAS (Dkt. 14).

In the District of New Mexico, *S.R.* was recently removed from state court. Defendants have not yet answered.

In the District of Oregon, *CLF 007* was filed recently and Defendants have not answered.

ARGUMENT

## II.    CENTRALIZATION OF THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and

witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should transfer the Related Actions to a single district for coordinated or consolidated pretrial proceedings.

The Related Actions Involve Common Questions of Fact

For purposes of Section 1407, common questions of fact exist where multiple actions assert similar "core factual allegations" and "can be expected to focus on a significant number of common events, defendants, and/or witnesses." *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

The Panel routinely finds that cases concerning product liability issues and medical devices involve common questions of fact. *See, e.g.*, *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 793 F. Supp. 1098, 1100 (J.P.M.L. 1992) ("The actions present complex common questions of fact, as nearly all responding parties have acknowledged, on the issue of liability for allegedly defective silicone gel breast implants."); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1357 (J.P.M.L. 2016) ("All the actions involve factual questions relating to the risk of cancer[.]"); *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013) ("The subject actions share factual issues arising from allegations that defects in surgical products manufactured by Cook to treat pelvic organ prolapse and stress urinary incontinence cause injuries to women who are implanted with the products."); *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015) ("These actions all involve common factual questions arising from allegations that (1) defects in the design of Ethicon's power morcellators made laparoscopic hysterectomy or myomectomy procedures more likely to result in the dissemination and upstaging of occult cancer or other conditions, and (2) Ethicon failed to warn

patients adequately of these risks . . . ."); *In re: Wright Med. Tech., Inc., Conserve Hip Implant Prod. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012) ("The actions share factual questions concerning design, manufacture, marketing and performance of Wright's Conserve line of hip implant products.").

There is no reason to diverge from the Panel's past precedent here. The Related Actions all concern whether Defendants' recalled global culture media was defective, and whether such defect harmed the eggs and embryos exposed to it. *See In re: Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016) ("[A]ll the actions entail an overarching query—whether glyphosate causes non-Hodgkin's lymphoma in persons exposed to it while using Roundup."). They also all involve common questions and overlapping discovery surrounding Defendants' knowledge and the design, testing, manufacture, and marketing of its global culture media products, "including the warnings accompanying" the products. *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d at 1353 ("Most actions also involve common factual questions regarding the risk that women undergoing hysterectomies and myomectomies had occult cancer, and what Ethicon knew about that risk and when. Discovery, including expert discovery, will overlap with respect to these common issues.").

Centralization is therefore appropriate under Section 1407.

## Centralization Would Serve the Convenience of Parties and Witnesses and Promote the Efficient Conduct of the Related Actions

Because the Related Actions' factual allegations and legal claims largely overlap, transfer would serve "the convenience of parties and witnesses and … promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a).

Time is of the essence for people impacted by the recall. Younger eggs are more likely to produce healthy embryos, leading to healthier children. ¶ 67. The most determinative factor in IVF success is the woman's age at the time her eggs were extracted. ¶ 40. At some point, usually around her mid-40s, a woman can no longer produce viable eggs. *Id.* And while Defendants instituted a recall and offered patients compensation, they have conditioned that compensation on a release of liability, forcing patients to choose between litigating their injuries versus risking later-in-life IVF cycles. *See generally* Mot. for Protective Order, Dkt. 8.

Centralization would also serve the convenience of the parties and witnesses. To show that Defendants defectively manufactured the media and that the defective media damaged the eggs and embryos it encountered, the Plaintiffs in the Related Actions will pursue similar testimony, documents, and other evidence from Defendants and third parties. Transfer and consolidation of the Related Actions will have "the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d at 1375.

Because the Related Actions raise many common questions of fact and law, they will also present many overlapping pretrial issues, including the type and scope of discovery and expert work, and the adequacy of the claims and allegations. *See, e.g.*, *In re: Zimmer Durom Hip Cup Prod. Liab. Litig.*, 717 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) ("Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary."); *In re:*

*Actos Prod. Liab. Litig.*, 840 F. Supp. 2d 1356 (J.P.M.L. 2011) (similar); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (similar).

For these reasons, the Panel should centralize the Related Actions in the interests of justice and efficiency.

### III.     THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the positions of the parties; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). This Panel has also recognized the importance of transferring actions to a "court that has the resources available to manage this litigation"—a particularly acute consideration here given the exigency of these matters. *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007).

Movants submit that the Northern District of California is well-suited, and the clear center of gravity, for these cases. The majority of cases, twenty-seven out of thirty, are pending in the Northern District of California, including the first-filed case, *E.F. et al. v. CooperSurgical, Inc. et al.*, No. 4:24-cv-00643-JST, and the only class action, *F.G. and H.I. v. CooperSurgical, Inc. et al.*, No. 4:24-cv-01261-JST. That weighs in favor of consolidation in the Northern District of California. *See, e.g.*, *In re Tasigna (Nilotinib) Prods. Liab. Litig.*, 555 F. Supp. 3d 136, 1365 (J.P.M.L. 2021) (Middle District of Florida was the appropriate transferee district as "[m]ore cases are pending in this district than any other district."); *See e.g.*, *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358 (J.P.M.L. 2020) (centralizing fourteen actions pending in three

districts in the district where "half of the related actions . . . are pending"); *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (finding consolidation and transfer to the Eastern District of Tennessee appropriate where the majority of the related actions were already pending there before a single judge).

The Northern District of California is well-versed in multidistrict litigation and has many distinguished judges capable of managing this MDL, including Judge Tigar, who currently presides over the actions related within the district. At the time of filing this motion, there are thirteen active MDLs pending in the district spread among twenty-three Article III judges.[4] The Northern District of California is adept at managing its docket. In 2023, the district had 6,521 cases filed and terminated 6,499; it has 13,154 pending cases as of the end of 2023.[5] The Northern District of California has also managed the only IVF product liability cases concerning the alleged destruction of human eggs and embryos to go to verdict, *In re Pacific Fertility Center Litig.*, No. 18-cv-01586-JSC (N.D. Cal.) (consolidated cases under Fed. R. Civ. P. 42(a), Dkt. 554).

Judge Tigar is well-qualified to handle this MDL. In addition to already being assigned to twenty-six cases pending in the Northern District of California, Judge Tigar has experience presiding over MDLs, such as MDL 1917, *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, 4:07-cv-05944-JST, which is set for trial in February 2025.

The United States District Court for the Northern District of California is also convenient for the parties and witnesses and easily accessible. The parent company defendant, The Cooper

---

[4] https://www.cand.uscourts.gov/multidistrict_litigation/

[5] Table C-1 U.S. District Courts Civil Cases Commenced, Terminated, and Pending by Jurisdiction During the 12-Month Period Ending December 31, 2023 (available at https://www.uscourts.gov/data-table-numbers/c-1) (last accessed June 21, 2024).

Companies, Inc., resides in this district. For other parties and witnesses, the Bay Area has multiple large airports and other convenient modes of transportation. *See In re Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting the conveniences of a metropolitan area with major airline service, hotel, and office accommodations).

No other forum is better-suited. While the subsidiary company, CooperSurgical Inc., is located in the District of Connecticut, no cases are currently pending there and any in-person discovery, such as witness depositions, could take place in that district for the convenience of those witnesses. And, in an age where the bulk of information is stored and transmitted electronically, the District's distance from CooperSurgical's headquarters is not a significant factor. *See EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342 (E.D.N.Y. 2012) (rejecting Facebook's argument that the case should be transferred to N.D. Cal. under 28 U.S.C. § 1404 because relevant documents could be found there and stating that "the Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic document production."); *see also Griffin Capital Company, LLC v. Essential Properties Realty Trust, Inc.*, 2019 WL 5586547 (N.D. Ga. 2019) ("District courts in this circuit have found that the location of physical documents does not play a substantial role in the venue analysis due to the electronic storage and transmission of information.").

Defendants have raised jurisdictional challenges to the Northern District of California in Movant's cases and cases related to them. The parties will complete briefing on those issues on July 12, 2024. Judge Tigar will resolve the challenges forthwith. However Judge Tigar decides, these cases can be included in the MDL now and designate their trial forum to a court of suitable jurisdiction to the extent they wish to do so pursuant to a direct filing order. *See, e.g.*, *In re Uber*

*Techs., Inc., Passenger Sexual Assault Litig.*, No. MDL 3084, — F. Supp. 3d —, 2023 WL

6456588 (J.P.M.L. Oct. 4, 2023) (direct transfer order); *In re Chrysler Pacifica Fire Recall Prod.*

*Liab. Litig.*, MDL No. 3040, 2023 WL 8602971, at *7 (E.D. Mich. Dec. 11, 2023) ("Cases

consolidated by the JPML retain their separate character [and] [c]onsolidation must not affect the

parties' substantive rights, particularly where consolidated cases originating in different

jurisdictions may require application of different rules of law.") (citing *Lexecon Inc. v. Milberg*

*Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)).

The Northern District of California is therefore a suitable transferee district and Judge

Tigar, or another judge from the district, will help steer this litigation on a prudent course.

## IV.    CONCLUSION

For the foregoing reasons, Movants respectfully request that the Panel transfer and

promptly centralize the Related Actions before the Hon. Jon S. Tigar of the Northern District of

California or another judge in the district.


Dated: June 27, 2024

Respectfully submitted,

/s/ *Dena C. Sharp*
Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: dsharp@girardsharp.com
Email: apolk@girardsharp.com
Email: ngliozzo@girardsharp.com

*Counsel for plaintiffs A.B., C.D., F.G., and*
*H.I.*